# THE WASHINGTON AND GEORGETOWN RAILROAD CO.

### *v.*

## WRIGHT.

---

STREET RAILWAYS; NEGLIGENCE; CONTRIBUTORY NEGLIGENCE.

1. The gathering of a large crowd in the immediate vicinity of the tracks of a street railway company, and overflowing them, imposes upon the company's employees the duty of greater care and caution in the running of trains, but does not require the stopping of the trains altogether.

2. Where a person in such a crowd while standing on or in dangerous proximity to street railway tracks reading bulletins of election returns, is struck by a train and injured, he is guilty of such negligence as will prevent a recovery of damages from the street railway company, whether the company has been guilty of negligence or not.

No. 473.   Submitted October 10, 1895.   Decided December 2, 1895.

HEARING on an appeal by the defendant from a judgment on verdict in an action to recover damages for personal injuries. *Reversed.*

The COURT in its opinion stated the case as follows:

This is a suit for damages for personal injuries sustained by the appellee, John H. Wright, plaintiff in the court below, for whom there was a judgment in that court.

On the evening of November 8, 1892, which was the day of the Presidential election in that year, a large crowd of

persons was assembled on Pennsylvania avenue, in the city of Washington, in the neighborhood of Tenth and Eleventh streets, where were located the offices of two newspapers, the " Washington Post " and the " Evening Star," in front of which, upon sheets of canvas hung across portions of these streets, bulletins were displayed by means of magic lanterns to give the result of the election, as the news came in by telegraph from the various parts of the country. Sometime after dark on that evening, and about six or seven o'clock, for the time is not very definitely fixed by the testimony, the plaintiff came out of a saloon on the west side of Tenth street, south of Pennsylvania avenue, and proceeded northward across the avenue to see the bulletins in front of the Post building on the corner of Tenth and D streets.   As he arrived near the southernmost track of the railroad line on the avenue, he saw a train pass going towards the east; and then, according to his own statement, he stepped upon the track, and standing inside the rails, stopped to read the bulletins in front of him.

According to the statement of some of the witnesses, he had not gone upon the track inside the rails, but was standing so near to it that he could be touched by a car passing upon the track.   At all events, as he was standing upon the track or in dangerous proximity to it, he was struck and thrown down by another train of the cable cars, also going towards the east; and the wheels passed over one of his legs, severely injuring it and necessitating amputation.

The crowd was quite large at the time and place of the accident.   Some of the witnesses stated that it was so dense that it opened to let the trains pass, and immediately closed in again into a dense mass behind them.   Others testified that it was more sparse towards the south side of the avenue.

The claim of the plaintiff is that his injury was due to the negligence or carelessness of the defendant's employees in moving their train with unnecessary and improper rapidity through the crowd, and in failing to give due notice of its

approach by sounding the gong or giving some other warning. And there was testimony introduced at the trial on behalf of the plaintiff to show that no bell or gong was sounded, and that the train was moving rapidly—although it was not claimed or sought to be shown that it was moving more rapidly than was allowed or authorized by law and the regulations in force in relation to the speed of trains on street railroads. On behalf of the defendant it was sought to be shown by testimony at the trial that the train was not moving rapidly ; that the gong had been sounded all the way from Eleventh street to Tenth, and that all proper precautions had been taken to guard against accident. But the main defence was the alleged contributory negligence of the plaintiff himself.

During the course of the trial in the court below, some exceptions were taken on behalf of the defendant to the action of the court in the allowance of some testimony on behalf of the plaintiff; but the exceptions are unimportant, and we do not understand that they are greatly, if at all, insisted upon by the appellant.

At the close of the testimony, the counsel for the defendant submitted a motion for a peremptory instruction to the jury to return a verdict for the defendant, which motion was denied. A similar motion had been made at the close of the plaintiff's testimony, and refused ; and to such refusal of the court an exception had been taken. But, of course, this exception was abandoned by the action of the defendant in proceeding to offer testimony on its own behalf. Some remarks, however, which were made at that time by the presiding justice, in which he stated what he understood to be the grounds of the motion and his reasons for its refusal, were subsequently sought, at the conclusion of the trial, and after the final charge by the court to the jury and after all the instructions requested had been passed upon, to be made the subject of exception ; and exception to them was then and there noted. Whether this exception was taken in time and can be considered by us, it is not perhaps important for us to determine in this case.

After the refusal of the defendant's motion, made at the conclusion of all the testimony, for a peremptory instruction to the jury to return a verdict for the defendant, counsel for the defendant submitted seven specific prayers for instructions, three of which were given and four refused; and exception was duly taken to the refusal. No instructions were requested on behalf of the plaintiff. But the court charged the jury of its own motion; and to eleven specified portions of the charge exceptions were duly reserved by the defendant.

The verdict of the jury was for the plaintiff in the sum of $5,000; and from the judgment thereon the defendant has appealed.

*Mr. Enoch Totten, Mr. W. H. Dennis* and *Mr. W. D. Davidge* for the appellant.

*Messrs. R. Ross Perry & Son* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

That there was sufficient testimony in this case for submission to the jury upon the question of the defendant's negligence, if there was no question of the contributory negligence of the plaintiff, we think very clear: and we do not understand that the point is seriously, if at all, controverted. What we may think of the preponderance of evidence is a matter of no consequence. There was here a situation demanding great and unusual care and caution from the defendant's employees. The conclusion to be deduced from the argument on behalf of the appellee is that it was the duty of the railroad company to stop the running of its trains on this occasion. To this we cannot assent. The company had the right, and it was its duty under the law, to run its trains on this as on other occasions. These trains are run, not merely for individual profit, but mainly for the benefit of the public, for which alone the charter and the franchise of the company are

granted.  They are required by law to be run at stated times, and under schedules as to speed, regulated by the public demand and the regulations ordained for the purpose by the public authority ; and the company has no right, even for a day or for an hour, or for any appreciable part of the time ordinarily devoted to such business, to abandon the exercise of its duties under its charter, except in the presence and under the stress of circumstances beyond its control.  We do not think that the gathering of a crowd upon the public streets, influenced by curiosity or eager for news, is such a circumstance.  The collection of such a crowd in the immediate vicinity of its tracks, or overflowing upon them as we have stated, would impose upon the company's employees the duty of greater care and caution, but not the abandonment of their work ; although, perhaps, we may conceive of extraordinary emergencies, in which it might be their duty to suspend their operation. No such extraordinary case, however, is presented here.  It was only a case for increased circumspection on their part and if they failed in the circumspection due to the occasion, it was negligence on their part.  Specific acts of such negligence are charged ; and it was proper that the jury should pass upon the question of their proof—unless action by the jury was precluded by palpaple and. glaring contributory negligence on the part of the plaintiff.  It is the question of this contributory negligence, or the question whether the plaintiff's own negligence was not the sole cause of his misfortune, that dominates this case.

It is not denied by counsel for the plaintiff, and it cannot well be denied, that the act of the plaintiff, in standing upon the railroad track or so near it as to be within the limit of liability of being struck by passing trains, was in itself, if considered alone, an act of negligence, which, under ordinary circumstances, would have precluded him from recovery against the defendant, without regard to the matter of the defendant's negligence.  But the argument is, that, under the peculiar circumstances of this case and un-

der the unusual circumstances in which the plaintiff found himself, an act, ordinarily to be held as negligence, ceased to be negligence by reason of the surroundings, and was a matter proper to be submitted to a jury for their determination whether it was in fact negligence.

When the question of negligence and contributory negligence—for the law in regard to both in this connection is the same—is one of law for the court, and when it is one of fact for the jury under proper instructions from the court, is a source of endless controversy; and in view of the fact that circumstances vary so greatly, and that probably no two cases ever occur that are precisely alike in all their circumstances, we see no good ground for supposing that the controversy will ever have an end. The law, it is true, seems to be well settled and plain enough : it is the application of the law to the varying cases, with their kaleidoscopic changes, that presents the matter of constantly recurring difficulty. It would be a useless and almost impossible task to review the multitude of authorities on the subject, with the view of eliciting from them some uniform and unerring rule to guide us in the application of the well-established principles that govern the law of negligence ; for it would seem, after all, that each case must be governed by its own circumstances. It appears to us, however, that what we said in the recent case of *Warner* v. *Baltimore and Ohio Railroad Co., ante*, p. 79, may serve to aid us in the consideration of the subject. There we said that no one is entitled to disregard with impunity the usual safeguards and the usual precautions which every person of reasonable mind and ordinary intelligence recognizes as right and proper to be observed when dealing with the modern instrumentalities of rapid transit, unless there has been some inducement, express or implied, held out by the railroad company or its agents, that one may depart therefrom without danger. It seems to us to be the rule deduced from all the authorities, that, when a railroad company creates a situation, or permits a condition of things to exist,

which it is its duty to make a situation or condition of safety, and a person who is brought into relation with the company, and who has the right to rely upon the safety of the situation so created or of the condition of things so permitted to exist, is injured, notwithstanding the assurance so held out to him, he is not chargeable, as a matter of law, with contributory negligence, although the situation or condition was in its nature one of risk and danger; and the question of negligence in such a case is one of fact to be submitted to a jury. The converse of the proposition is likewise true—that, when a defendant has had no part in the creation of a situation which has induced a plaintiff to assume a position of obvious peril which otherwise he would not have assumed, and when the position is plainly one that, in the absence of the circumstances supposed to justify it, should charge the person as for an act of negligence, it would be manifestly unjust to hold the defendant for that which he did not cause and could not control.

If the act of the plaintiff in this case was in itself, as it undoubtedly was, an act of negligence, when he carelessly placed himself in the way of the defendant's trains, we do not see how it could cease to be an act of negligence, as to the defendant and the defendant's liability to him, because there were other persons there, or because there were circumstances to draw a crowd and to arrest their attention, to which the defendant in no wise contributed. If the interest involved in a Presidential election and the gathering of a crowd to ascertain the result, are sufficient to justify a person in standing motionless upon a railroad track, where trains are passing at intervals of a minute or two, oblivious of his danger or regardless of the risk which he runs, it is difficult to see why attention to any other object of interest, even to the antics of some passing mountebank, should not suffice to convert culpable negligence into excusable action, and block unreasonably the commerce of a great city. The inquiry in all cases would then be, not whether the act was negligent but whether the person's attention to other

things was such as to make him forget for the time his position of danger. This, we think, would wholly subvert the doctrine of contributory negligence, and render the railroad company responsible for conduct in which it had no agency and which it could not have prevented.

Negligence and contributory negligence alike become questions for the jury when the facts concerning the conduct of the parties towards each other are in controversy. But when the action of the plaintiff, not superinduced in any manner by the defendant, is apparent from the testimony of the plaintiff himself, and is such an act as, unexplained, must be regarded by every reasonable man as an act of negligence, such as, beyond question, was the act of the plaintiff in this case, the explanation or excuse that is relied on to convert the act from one of negligence in law to a question of fact for the jury, must be of conduct of the defendant such as would tend to justify the action, not of conduct of other persons independent of the defendant.

The circumstances relied upon in this case to excuse the plaintiff, the gathering of a great crowd, the interest in the result of the Presidential election, the difficulty of seeing and hearing the trains in consequence of the crowd, the noise and confusion, were none of them superinduced by the defendant. They were not facts to go to the jury in excuse of the plaintiff's negligence with reference to the defendant. . They could not in law have made the defendant liable, if in the absence of them it was not liable. Instead of excusing the plaintiffs negligence, they would seem rather to have enhanced it.

We think the court should have granted the instruction requested by the defendant that the jury should return a verdict in favor of the defendant, and that it was error to refuse such instruction. For that error *the judgment must be reversed with costs, and the cause remanded, with directions to award a new trial.*